# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 09-6055 |
| GLOBAL REINSURANCE CORPORATION OF AMERICA (FORMERLY KNOWN AS CONSTITUTION REINSURANCE CORPORATION), | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**  APRIL 23, 2010

Presently before the Court are Cross-Motions for Judgment on the Pleadings filed by Defendant Global Reinsurance Corporation of America ("Global") and Plaintiff Pacific Employers Insurance Company ("PEIC") as to Count II of Global's Counterclaim for Declaratory Judgment. For the following reasons, Global's Motion is granted and PEIC's Motion is denied.

## I.  BACKGROUND

The claims in this case relate to a reinsurance contract.[1] For the period June 1, 1980 to June 1, 1981, PEIC entered into a facultative reinsurance contract[2] ("Facultative Certificate")

---

[1] As described in PEIC's Complaint, "[i]n a reinsurance contract, a reinsurer agrees to indemnify the reinsured against all or part of the loss that the reinsured may sustain under an insurance policy or policies the company has issued, in exchange for a portion of the premium paid to the reinsured for the insurance policies." (Compl. ¶ 7.)

[2] "A 'facultative' reinsurance contract reinsures a specific insurance policy or risk, as opposed to 'treaty' reinsurance, which reinsures multiple insurance policies or an entire book of

with Global, Certificate No. 68224, through which Global, as the reinsurer, agreed to reinsure an umbrella commercial liability policy (No. XMO-003649) ("Direct Policy") that PEIC issued to the Buffalo Forge Company ("Buffalo Forge").

The first page of the Facultative Certificate (the "Declarations page") sets forth specific information regarding the reinsurance agreement between PEIC and Global, including the names of the parties, the dollar amount of risk retained by PEIC ($1 million), and the dollar amount of reinsurance accepted by Global. Specifically, "Item 3"and "Item 4" of the Declarations page states:

> ITEM 3 - COMPANY [PEIC] RETENTION
>
> THE FIRST $1,000,000 SUBJECT TO FACULTATIVE REINSURANCE.
>
> ITEM 4 - REINSURANCE ACCEPTED
>
> $1,000,000 ANY ONE OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $4,000,000 WHICH IS EXCESS OF $1,000,000 WHICH IN TURN IS EXCESS OF UNDERLYING INSURANCE.

(Compl., Ex. A at 1.)

The second page of the Facultative Certificate is titled "Reinsuring Agreements and Conditions." Significantly, the preamble on this page states:

> In consideration of the payment of the premium, ***and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part thereof***, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

(Id. at 2 (emphasis added).) Following this first sentence, the second page of the Facultative

---

business written by the reinsured." (Compl. ¶ 8.)

Certificate outlines conditions A through L, which in relevant part, provide:

> A. . . . The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy ***except when otherwise specifically provided herein*** or designated as non-concurrent reinsurance in the Declarations . . . .
>
> E. All loss settlements made by the Company, provided they are within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. ***Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment*** . . . .

(Id. (emphasis added).)

At some point after the Facultative Certificate was executed, Buffalo Forge and its corporate successors were named as defendants in numerous asbestos products personal injury lawsuits. PEIC participated in the defense and indemnity of Buffalo Forge pursuant to the Direct Policy.

By September 2009, PEIC's payments on behalf of Buffalo Forge exceeded the $1 million retention on the Facultative Certificate. On or around September 2, 2009, PEIC billed Global pursuant to the Facultative Certificate. Along with the billing, PEIC submitted supporting information and portions of its investigative claim file to Global. In response, Global requested additional documentation to support the billing. According to PEIC, Global has not paid the amounts billed pursuant to the Facultative Certificate. Specifically, at the time of PEIC's Complaint, Global allegedly "owe[d] PEIC $559,072 under the Facultative Certificate for its share of defense and indemnity payments in connection with the underlying asbestos claims

3

against Buffalo Forge." (Compl. ¶ 27.)

PEIC filed its Complaint against Global in this Court on December 18, 2009. Count I of the Complaint alleges breach of contract and Count II seeks declaratory relief for a declaration of its rights under the Facultative Certificate. On February 24, 2010, Global filed its Answer, Affirmative Defenses, and Counterclaim. In Count II of its Counterclaim, Global seeks a declaration that the $1 million limit of liability set forth in the Facultative Certificate is the maximum that PEIC could potentially recover under the Facultative Certificate in connection with the asbestos litigation liabilities. On February 25, 2010, PEIC filed its Answer to Global's Counterclaim.

On February 26, 2010, Global filed its Motion for Judgment on the Pleadings regarding Count II of its Counterclaim. On March 19, 2010, PEIC filed its Response in Opposition to Global's Motion and a Cross-Motion for Judgment on the Pleadings regarding Count II of Global's Counterclaim. Specifically, PEIC requests that the Court find that as a matter of law Global is obligated for up to $1 million of loss and, in addition thereto, a pro rata share of expenses pursuant to the language of the Facultative Certificate. On April 2, 2010, Global filed a Response to PEIC's Cross-Motion for Judgment on the Pleadings. On April 8, 2010, PEIC filed a Reply.

The issue raised by the instant Motions is whether expenses are subject to the $1 million limit stated in the "Reinsurance Accepted" section of the Facultative Certificate. PEIC alleges that the $1 million cap does not apply to the expenses and Global claims that it does.

II.     **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the

pleadings after the pleadings have closed, but not within such time as to delay trial. In order to prevail on such a motion, the movant must show "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004). In considering a motion for judgment on the pleadings, this Court views the facts alleged in the pleadings as true and any inferences to be drawn therefrom in the light most favorable to the non-movant. Id.

## III. DISCUSSION

### A. General Contract Interpretation Principles

The basic rule of contract interpretation is to ascertain and give effect to the intent of the contracting parties. Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001). "When the terms of a contract are clear and unambiguous, then intent of the parties is to be ascertained from the document itself." Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 481 (Pa. 2006). The issue of whether contractual language is ambiguous is a question of law. Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 561 (Pa. Super. Ct. 2006).

As a general matter, contractual terms that are ambiguous are to be construed against the drafter. Meeting House Lane, LTD. v. Melso, 628 A.2d 854, 858 (Pa. 1993). Ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted by the court as a question of law. Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 n.10 (3d Cir. 1994). "A contract will be found ambiguous if, and only if, it is reasonably or fairly susceptible to different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning."

5

Metzger v. Clifford Realty Corp., 476 A.2d 1, 5 (Pa. Super. Ct. 1984) (citation omitted).[3]

B.     The Unambiguous Facultative Certificate Language

"Item 4" on the Declarations page of the Facultative Certificate outlines the "REINSURANCE ACCEPTED": "$1,000,000 ANY ONE OCCURRENCE AND IN THE AGGREGATE . . . ." (Compl., Ex. A at 1.) The parties do not dispute that the language in "Item 4" of the Facultative Certificate sets some type of $1 million cap. The issue in dispute is whether that cap encompasses expenses or excludes them.

The Court finds that this broad and unambiguous language clearly encompasses expenses because it defines Global's maximum exposure under the Facultative Certificate. Notably, as argued by Global, the clause does not differentiate between reinsurance accepted for "losses" versus reinsurance accepted for "expenses." The language simply provides a $1 million total cap on liability for loss payments, expense payments, or any combination thereof. Indeed, if the parties intended to exclude expenses from the total liability limit, they could have made that clear through Item 4's language or another part of the Facultative Certificate. They did not do so.[4]

---

[3] The parties briefly raise a conflicts of law issue despite overwhelmingly citing Pennsylvania law for the contractual interpretation issues. Nevertheless, both parties agree that resolution of any conflicts of law issue is not needed to dispose of the instant Motions. (See Global's Mem. of Law in Opp. to PEIC's Cross-Mot. at 12 ("However, the Court need not even undertake the foregoing [conflicts of law] analysis in order to apply New York law here because there is no conflict between New York and Pennsylvania law in the first instance . . . . In fact, there is no conflict between the laws of any state on this issue . . . ."); see also PEIC's Reply Mem. at 6 ("Myriad of facts remain unknown and/or unproven which bear on the question of what state's law governs the Facultative Certificate . . . . Such a determination is not necessary for the Court to rule on the pending cross-motions, however, because the basic tenets of contract construction which must be applied do not differ state-to-state.").)

[4] As noted by Global, any agreement to treat expenses differently and/or not limit them under the Facultative Certificate would have most likely led to a higher premium for PEIC.

PEIC argues that Paragraph E of the second page of the Facultative Certificate (titled "Reinsuring Agreements and Conditions") parses out expenses from this $1 million cap. As mentioned, Paragraph E states:

> E. All loss settlements made by the Company, provided they are within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. ***Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment*** . . . .

(Id. at 2 (emphasis added).)

PEIC claims that the two bolded sentences above create two separate obligations and exclude the payment of expenses from the liability limit set forth in Item 4 of the Declarations. In regard to the first sentence, PEIC argues that it establishes an obligation for Global to pay a "proportion" of loss as set forth in Item 4 of the Declarations. It argues that the sentence makes clear – by linking "loss" to the Declarations – that the cap in Item 4 exclusively relates to Global's loss payments. PEIC emphasizes that there is a period before the second sentence where expenses are discussed. Further, PEIC argues that the second sentence includes the language "[i]n addition thereto" and adds a second obligation for Global to pay its proportion of expenses without any reference to the Declarations. Thus, PEIC contends that the cap in Item 4 of the Declarations does not apply to Global's payment of expenses pursuant to the Facultative Certificate.

PEIC's arguments are without merit. Paragraph E does not outline limits of liability, but merely outlines the two separate proportions of losses and expenses that Global is obligated to

7

pay pursuant to the Facultative Certificate. The loss proportion just happens to originate from the Declarations page and that is why the Declarations are referenced in the first bolded sentence. The paragraph merely outlines that Global will reimburse PEIC's losses pursuant to one proportion and that "in addition" it will reimburse PEIC's expenses according to a different proportion. Paragraph E does not mention a separate limit for expenses. Further, it says nothing about excluding expenses from the $1 million cap delineated in Item 4 of the Declarations. Again, if the parties intended to exclude expenses from this total liability limit, they could have made that clear in some section of the Reinsurance Certificate – including Paragraph E.

Moreover, as previously noted, Paragraph E is preceded by a preamble paragraph – which is applicable to all paragraphs of the "Reinsuring Agreements and Conditions" page – which states: "In consideration . . . of the premium, ***and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part thereof***, the Reinsurer does hereby reinsure the ceding company named in the Declarations . . . in respect of the Company's policy(ies) as follows." (Id. at 2 (emphasis added).) This sentence makes clear that Global's reinsurance obligations, including those outlined in Paragraph E, are "subject to" the "terms, conditions, and ***limits of liability***" contained in the Declarations and on the "Reinsuring Agreements and Conditions" page. The only limit of liability in the Facultative Certificate is the $1 million limit found in Item 4 of the Declarations. Thus, this limit applies notwithstanding any language in Paragraph E.

This case is similar to <u>Bellefonte Reinsurance Company v. Aetna Casualty and Surety Company</u> where the Second Circuit held that reinsurers were not liable for defense costs beyond the policy limits outlined in the reinsurance certificates. 903 F.2d 910, 914 (2d Cir. 1990). In

8

Bellefonte, the court also considered an argument from a reinsured that an "in addition thereto" expense clause in certain reinsurance certificates indicated that liability for defense costs was separate from liability for underlying losses and, thus, not subject to the overall liability limitation. Id. at 913. The court disagreed and found:

> We read the phrase "in addition thereto" merely to differentiate the obligations for losses and for expenses. ***The phrase in no way exempts defense costs from the overall monetary limitation in the certificate. This monetary limitation is a cap on all payments under the certificate***. In our view, the "in addition thereto" provision merely outlines the different components of potential liability under the certificate. It does not indicate that either component is not within the overall limitation.

Id. (emphasis added). The court further noted: "Here, the limitation on liability provision capped the reinsurers' liability under the certificates. All other contractual language must be construed in light of that cap." Id. at 914.

Other federal courts considering this issue in reinsurance cases have agreed with and followed the Second Circuit's reasoning in Bellefonte – even when analyzing different contractual language and circumstances. See e.g., Unigard Security Ins. Co. v. North River Ins. Co., 4 F.3d 1049, 1071 (2d Cir. 1993) ("Provision 1 of the Certificate, like the certificate in Bellefonte, provides that Unigard agreed to reinsure North River 'in consideration of the payment of the reinsurance premium and subject to the terms, conditions, limits of liability, and Certificate provisions set forth herein. In Bellefonte, we stated, 'the limitation on liability provision capped the reinsurers' liability under the [Certificate]. All other contractual language must be construed in light of that cap.'"); Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd., 992 F. Supp. 271, 277 (S.D.N.Y. 1997) ("Thus Bellefonte and Unigard's holdings that the limit clauses define the reinsurers' bargained-for-maximum exposure to liability inclusive of all costs and

9

expenses are applicable even where the underlying insurance policy does not oblige the insurer to cover the insured's defense costs.").[5]

The parties dispute the authoritative impact of Bellefonte and its progeny because the contractual language of each reinsurance contract is different and due to the fact that there is a disagreement over the controlling law in this case. At a minium, however, Bellefonte and its progeny are well-reasoned, persuasive authority.[6] 1A Couch on Insurance § 9:29 (3d ed. 2009) (insurance treatise citing Bellefonte for the proposition that "the liability for defense costs will not extend beyond the limit of liability as stated in the reinsurance agreement"). In addition to its own interpretation of the language of the Facultative Certificate in this case, this Court agrees with and follows the reasoning of Bellefonte, Allendale, and Unigard. The cap in Item 4 of the Facultative Certificate encompasses expenses and defines Global's maximum exposure.

For the reasons set forth above, the Court finds that there are no material issues of fact

---

[5] The only case that PEIC identifies that directly supports its position is Penn Re, Inc. v. Aetna Casualty and Surety Company. No. 85-385-CIV-5, 1987 WL 909519 (E.D.N.C. June 30, 1987). In this 1987 case, after analyzing a reinsurance contract and a similar "in addition thereto" expense clause, a court from the Eastern District of North Carolina found that the reinsurers' payment obligations were "not limited to [the] liability for the risks which the underlying insurance policies covered, but require[d] that, in addition thereto, reinsurers pay their proportion of suit costs and expenses." Id. at 9. As an initial matter, Penn Re was decided before Bellefonte and is a lower court decision. Moreover, as the Second Circuit noted in Bellefonte, "the [Penn Re] court did not consider the 'subject to' [preamble] clause . . . which makes the 'in addition thereto' language 'subject to' the cap on liability . . . ." Bellefonte, 903 F.2d at 914. For these reasons, the Court will not follow the reasoning in Penn Re.

[6] PEIC cites various commentators that have criticized the Bellefonte case. The Court finds these secondary authorities unconvincing and agrees with the sound reasoning of the decision as described above.

and judgment as a matter of law is appropriate, in favor of Global, as to Count II of its Counterclaim for Declaratory Judgment. Global's maximum exposure pursuant to the Facultative Certificate is $1 million – inclusive of expenses. Accordingly, Global's Motion for Judgment on the Pleadings will be granted and PEIC's Motion will be denied.

     An appropriate Order follows.