IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                                                                 |   |              |
|---------------------------------------------------------------------------------|---|--------------|
| PACIFIC EMPLOYERS INSURANCE COMPANY,                                            | : | CIVIL ACTION |
| Plaintiff,                                                                      | : |              |
| v.                                                                              | : | No. 09-6055  |
| GLOBAL REINSURANCE CORPORATION OF AMERICA (FORMERLY KNOWN AS CONSTITUTION REINSURANCE CORPORATION), | : |              |
| Defendant.                                                                      | : |              |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                              JUNE 9, 2010

Presently before the Court is Plaintiff Pacific Employers Insurance Company's ("PEIC") "Motion for Reconsideration or, in the Alternative, for Certification of Final Order Pursuant to Federal Rule of Civil Procedure 54(b) or, in the Alternative, to Certify April 23, 2010 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)." For the following reasons, PEIC's Motion is denied.

**I.    BACKGROUND**

The claims in this case relate to a reinsurance contract.[1] On April 23, 2010, this Court issued an Order and accompanying Memorandum granting Defendant Global Reinsurance Corporation of America's ("Global") Motion for Judgment on the Pleadings in regard to Count II

---

[1] As described in PEIC's Complaint, "[i]n a reinsurance contract, a reinsurer agrees to indemnify the reinsured against all or part of the loss that the reinsured may sustain under an insurance policy or policies the company has issued, in exchange for a portion of the premium paid to the reinsured for the insurance policies." (Compl. ¶ 7.)

of its Counterclaim for Declaratory Judgment and denying PEIC's Motion for Judgment on the Pleadings regarding the same Count. The Court declared that Global's maximum exposure pursuant to the relevant reinsurance contact was $1 million, inclusive of expenses. The April 23, 2010 Order and Memorandum can be found at <u>Pacific Employers Insurance Company v. Global Reinsurance Corporation of America</u>, No. 09-6055, 2010 WL 1659760 (E.D. Pa. Apr. 23, 2010).

For purposes of deciding the instant Motion, the Court will recite the relevant facts. For the period June 1, 1980 to June 1, 1981, PEIC entered into a facultative reinsurance contract[2] ("Facultative Certificate") with Global, Certificate No. 68224, through which Global, as the reinsurer, agreed to reinsure an umbrella commercial liability policy (No. XMO-003649) ("Direct Policy") that PEIC issued to the Buffalo Forge Company ("Buffalo Forge").

The first page of the Facultative Certificate (the "Declarations page") sets forth specific information regarding the reinsurance agreement between PEIC and Global, including the names of the parties, the dollar amount of risk retained by PEIC ($1 million), and the dollar amount of reinsurance accepted by Global. Specifically, "Item 3" and "Item 4" of the Declarations page state:

> ITEM 3 - COMPANY [PEIC] RETENTION
>
> THE FIRST $1,000,000 SUBJECT TO FACULTATIVE REINSURANCE.
>
> ITEM 4 - REINSURANCE ACCEPTED
>
> $1,000,000 ANY ONE OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $4,000,000

---

[2] "A 'facultative' reinsurance contract reinsures a specific insurance policy or risk, as opposed to 'treaty' reinsurance, which reinsures multiple insurance policies or an entire book of business written by the reinsured." (Compl. ¶ 8.)

>   WHICH IS EXCESS OF $1,000,000 WHICH IN TURN IS
>   EXCESS OF UNDERLYING INSURANCE.

(Compl., Ex. A at 1.)

The second page of the Facultative Certificate is titled "Reinsuring Agreements and Conditions." Significantly, the preamble on this page states:

> In consideration of the payment of the premium, ***and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part thereof***, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

(Id. at 2 (emphasis added).) Following this first sentence, the second page of the Facultative Certificate outlines conditions A through L, which in relevant part, provide:

> A. . . . The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy ***except when otherwise specifically provided herein*** or designated as non-concurrent reinsurance in the Declarations . . . .
>
> E. All loss settlements made by the Company, provided they are within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. ***Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment*** . . . .

(Id. (emphasis added).)

At some point after the Facultative Certificate was executed, Buffalo Forge and its corporate successors were named as defendants in numerous asbestos products personal injury lawsuits. PEIC participated in the defense and indemnity of Buffalo Forge pursuant to the Direct

Policy.

By September 2009, PEIC's payments on behalf of Buffalo Forge exceeded the $1 million retention on the Facultative Certificate. On or around September 2, 2009, PEIC billed Global pursuant to the Facultative Certificate. Along with the billing, PEIC submitted supporting information and portions of its investigative claim file to Global. In response, Global requested additional documentation to support the billing. According to PEIC, Global has not paid the amounts billed pursuant to the Facultative Certificate. Specifically, at the time of PEIC's Complaint, Global allegedly "owe[d] PEIC $559,072 under the Facultative Certificate for its share of defense and indemnity payments in connection with the underlying asbestos claims against Buffalo Forge." (Compl. ¶ 27.)

PEIC filed its Complaint against Global in this Court on December 18, 2009. Count I of the Complaint alleges breach of contract and Count II seeks declaratory relief for a declaration of its rights under the Facultative Certificate. On February 24, 2010, Global filed its Answer, Affirmative Defenses, and Counterclaim. In Count II of its Counterclaim, Global sought a declaration that the $1 million limit of liability set forth in the Facultative Certificate is the maximum that PEIC could potentially recover under the Facultative Certificate in connection with the asbestos litigation liabilities. On February 25, 2010, PEIC filed its Answer to Global's Counterclaim.

On February 26, 2010, Global filed its Motion for Judgment on the Pleadings regarding Count II of its Counterclaim. On March 19, 2010, PEIC filed its Response in Opposition to Global's Motion and a Cross-Motion for Judgment on the Pleadings regarding Count II of Global's Counterclaim. Specifically, PEIC requested that the Court find that as a matter of law

Global is obligated for up to $1 million of loss and, in addition thereto, a pro rata share of expenses pursuant to the language of the Facultative Certificate. On April 2, 2010, Global filed a Response to PEIC's Cross-Motion for Judgment on the Pleadings. On April 8, 2010, PEIC filed a Reply.

The issue raised by the Cross-Motions for Judgment on the Pleadings was whether expenses are subject to the $1 million limit stated in the "Reinsurance Accepted" section of the Facultative Certificate. PEIC alleged that the $1 million cap did not apply to the expenses and Global claimed that it did. In the April 23, 2010 Memorandum and Order, we concluded that the Facultative Certificate's unambiguous language clearly encompassed expenses. Accordingly, we found that judgment as a matter of law in favor of Global, as to Count II of its Counterclaim for Declaratory Judgment, was appropriate. As a result, we granted Global's Motion for Judgment on the Pleadings and declared that PEIC's maximum liability under the Facultative Certificate was $1 million, inclusive of expenses.

## II. STANDARD OF REVIEW

### A. Motion for Reconsideration

"The United States Court of Appeals for the Third Circuit has held that the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Cohen v. Austin, 869 F. Supp. 320, 321 (E.D. Pa. 1994). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. Id. Federal courts have a strong interest in the finality of judgments, and motions for reconsideration should

5

be granted sparingly. Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). Dissatisfaction with the Court's ruling is not a proper basis for reconsideration. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

**B.     Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b)**

Rule 54(b) allows the court to separate final decisions for immediate appeal in multi-claim or multi-party litigation. Fed. R. Civ. P. 54(b). The Rule provides, in relevant part:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Id. "Courts must use their discretion to ensure that application of Rule 54(b) 'effectively preserves the historic federal policy against piece-meal appeals.'" SEC v. Lucent Techs., No. 04-2315, 2009 WL 4508583, at *3 (D.N.J. Nov. 16, 2009).

Notably, "Rule 54(b) certification is 'disfavored' in circumstances where the adjudicated and unadjudicated claims share 'significant similarities, such as involving the same parties, the same legal issues, or the same evidence.'" Id. (citation omitted). Moreover, as the Third Circuit has noted, Rule 54(b) orders "should not be entered routinely or as a courtesy or accommodation to counsel." Panichella v. Pa. R.R. Co., 252 F.2d 452, 455 (3d Cir. 1958) (citation omitted).

**C.     Certification Pursuant to 28 U.S.C. § 1292(b)**

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an issue for interlocutory appeal when the proposed appeal concerns "(1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation . . . ." Apeldyn Corp. v. Samsung

6

Elecs. Co., Ltd., No. 08-568, 2010 WL 902484, at *2 (D. Del. Mar. 12, 2010); see also 28 U.S.C. § 1292(b). As courts in this district have discussed, this certification mechanism should only be used sparingly and in exceptional circumstances. Burella v. City of Phila., No. 00-CV-0884, 2010 WL 235110, at *5 (E.D. Pa. Jan. 14, 2010). The "[d]ecision to certify an interlocutory order for appeal under § 1292(b) 'rests within sound discretion of the trial court', and 'the burden is on the party seeking certification to demonstrate that exceptional circumstances justify departure from basic policy against piecemeal litigation and of postponing appellate review until after the entry of final judgment.'" Id. (citation omitted).

### III. DISCUSSION

The Court will now address the arguments in PEIC's present Motion. PEIC has failed to establish that the Motion for Reconsideration should be granted and that an immediate appeal of the issue decided on the Cross-Motions for Judgment on the Pleadings is appropriate.

#### A. Motion for Reconsideration

PEIC improperly makes many of the same arguments it already made to the Court, and even contradicts some of its earlier arguments. As this Court has noted, "[a]ny litigant considering bringing a motion to reconsider . . . should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Strine v. Borough of Media, No. 94-6911, 1996 WL 12959, at *1 (E.D. Pa. 1994); see also In re Linderboard Antitrust Litig., No. 98-5055, 2008 WL 4461914, at *4 (E.D. Pa. Oct. 3, 2008) ("[M]otion for reconsideration is not properly grounded on a request that a court consider repetitive arguments that have been fully examined by the court."). Moreover, a "motion to reconsider may not raise new arguments that could or should have been made in support of, or in

7

opposition to, the original motion." In re Linderboard, 2008 WL 4461914, at *3.

        1.        **Choice of Law**

As a threshold matter, PEIC's argument that the Court erred in finding in Global's favor without conducting a choice of law analysis directly contradicts arguments that it made in its briefing on the Cross-Motions for Judgment on the Pleadings. Thus, this argument is procedurally improper in a motion for reconsideration.

For example, in PEIC's Reply Memorandum in regard to the Cross-Motions, it stated: "Global is correct that ***there is no conflict [of laws] issue presented by these cross-motions*** . . . . As explained fully in [PEIC's] prior brief, there is not a single decided case that has interpreted language identical to that at issue here, as contained in the Facultative Certificate issued by Global to PEIC, so there is no controlling law to be applied no matter what state's law governs." (PEIC's Reply Mem. on Cross-Mots. for Judgment on the Pleadings at 1-2 (emphasis added).) In addition, in the same brief, PEIC stated: "Myriad of facts remain unknown and/or unproven which bear on the question of what state's law governs the Facultative Certificate . . . . ***Such a determination is not necessary for the Court to rule on the pending cross-motions***, however, because the basic tenets of contract construction which must be applied do not differ state-to-state." (Id. at 6 (emphasis added).)

Now, after coming out on the losing side on the Cross-Motions, PEIC argues that "the Court must address choice of law issues" to correct a manifest error. As previously mentioned, "a motion to reconsider may not raise new arguments that could have (or should have) been made in support of or in opposition to the original motion." Helfrich v. Lehigh Valley Hosp., No. 03-5793, 2005 WL 1715689, at *3 (E.D. Pa. July 21, 2005). PEIC's choice of law argument is not

8

only new, but it contradicts a previous position it took with this Court. As a result, the argument is completely improper.

Further, the substance of PEIC's choice of law argument is without merit. As PEIC previously contended, there was "no conflicts [of law] issue presented by [the] cross motions" and the Court did not need to conduct a choice of law analysis "because the basic tenets of contract construction which [were] applied do not differ state-to-state." (PEIC's Reply Mem. on Cross-Mots. for Judgment on the Pleadings at 1, 6.) The Court merely interpreted the clear and unambiguous language of the Facultative Certificate and found that Global's maximum exposure pursuant to the Facultative Certificate is $1 million – inclusive of expenses.

Indeed, PEIC previously acknowledged the Court's ability to interpret unambiguous language when it stated: "[U]nder any state's law that could possibly apply here, the ***plain meaning*** rule of contract interpretation – requiring that clear contract provisions be ascribed their ***plain meaning*** and all provisions be given effect – would apply."[3] (Id. at 2 (emphasis added).) PEIC's subsequent dissatisfaction with the Court's interpretation of the pertinent language certainly does not now make a choice of law analysis necessary. In sum, PEIC's choice of law argument is procedurally improper and substantially meritless.

### 2. Latent Ambiguity

---

[3] PEIC then cited cases from the three potentially relevant jurisdictions in this case that have acknowledged the "plain meaning rule of contract interpretation." Specifically, PEIC's citation read as follows: "See, e.g., Pennsylvania Nat. Mut. Cas. Co. v. Black, 916 A.2d 569, 579 (Pa. 2007) (court must ascribe clear contract provisions their plain meaning); Vintage LLC v. Laws Construction Corp., 920 N.E.2d 342, 343 (N.Y. 2009) ('where an agreement is unambiguous on its face, it must be enforced in accordance with the plain meaning of its terms'); Powerine Oil Co., Inc. v. Superior Ct., 188 P.3d 589, 598 (Cal. 2005) ('if contract language is clear and explicit, it governs')." (Id. at 2 n.1.)

PEIC also argues that the Court erred by not allowing it to move beyond the pleadings stage and present extrinsic evidence to support its interpretation of the contractual language. Specifically, PEIC contends that "if the Court were not persuaded to rule in PEIC's favor on a 'clear meaning' basis, it should have concluded that PEIC had identified sufficient 'contractual hooks' as to establish that the contract was ambiguous and permitted it to move beyond the pleadings stage to adduce extrinsic evidence." (PEIC's Mot. at 9.) As described below, the Court did not need to examine extrinsic evidence to interpret the contractual provisions at issue.

As indicated above, PEIC acknowledges that the Court could interpret the Facultative Certificate and rule on the issue on a "plain meaning" basis. The Court did just that in resolving the Cross-Motions for Judgment on the Pleadings. Nevertheless, because PEIC is dissatisfied with the Court's interpretation, it brings the instant Motion.

As is firmly established pursuant to Pennsylvania law, which PEIC suggests may apply in this case, "[a] contract will be found ambiguous if, and only if, it is reasonably or fairly susceptible to different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." Metzger v. Clifford Realty Corp., 476 A.2d 1, 5 (Pa. Super. Ct. 1984) (citation omitted). Moreover, "[a] contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995). Significantly, "a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." Id.

Despite making its own "plain meaning" argument in previous briefing, PEIC

alternatively and now vigorously argues that a latent ambiguity exists in the Facultative Certificate that prohibits the Court from interpreting the language in Global's favor at this stage in the litigation. Notably, however, as PEIC concedes, it did not even use the term "latent ambiguity" in briefing on the Cross-Motions.

"[A] latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." Id. As the Third Circuit has clarified:

> [A] claim of latent ambiguity must be based on a 'contractual hook': the proffered extrinsic evidence must support an alternative meaning of a specific term or terms contained in the contract . . . . Furthermore, ***a proffered alternative meaning for the contractual hook must be reasonable***; that is, it must be supported by contractual evidence that goes beyond the party's claim that the contractual hook has a certain meaning, and the interpretation cannot contradict the standard meaning of a term when the parties could have easily used another term to convey this contradictory meaning. ***In determining whether a latent ambiguity exists in a facially unambiguous contract, a court must consider whether the extrinsic evidence that the proponent of the alternative interpretation seeks to offer is the type of evidence that could support a reasonable alternative interpretation of the contract*** . . . .

Bohler-Uddeholm Am., Inc. v. Elmwood Group, Inc., 247 F.3d 79, 96 (3d Cir. 2001) (emphasis added).

PEIC argues that it has presented the Court with numerous and sufficient "contractual hooks" that should allow it to offer extrinsic evidence to support its contractual interpretation that expenses are excluded from the $1 million limit stated in the "Reinsurance Accepted" ("Item 4") section of the Facultative Certificate. The Court disagrees. PEIC's proffered meanings for these terms and the extrinsic evidence that PEIC seeks to offer to support its reading of the Facultative Certificate do not support a "reasonable alternative interpretation" of the facially

11

unambiguous agreement.

As thoroughly explained on pages six through eight of the Court's April 23, 2010 Memorandum, the broad and unambiguous language of "Item 4" of the Declarations page of the Facultative Certificate clearly encompasses expenses because it defines Global's maximum exposure. The language simply provides a $1 million total cap on liability for loss payments, expense payments, or any combination thereof. Not a single provision of the Facultative Certificate – whether you examine the Declarations page or "Reinsuring Agreements and Conditions" page – provides that expenses are excluded from the total liability limit. The $1 million limit is unambiguously inclusive of expenses. PEIC's alternative interpretation of the Facultative Certificate is unreasonable and merely a veiled attempt to redraft the relevant agreement. Thus, there is no latent ambiguity and the Court appropriately decided this contractual interpretation issue as a matter of law on the Cross-Motions for Judgment on the Pleadings.

### 3. The Court's Purported Reliance on Extrinsic Evidence

PEIC contends that the Court improperly relied on extrinsic evidence based on the following footnote in the April 23, 2010 Memorandum: "As noted by Global, any agreement to treat expenses differently and/or not limit them under the Facultative Certificate would have most likely led to a higher premium for PEIC." (April 23, 2010 Mem. at 6 n.4.) The Court clearly did not rely on Global's statement, or this brief footnote, in interpreting the language of the Facultative Certificate as a matter of law. This is obvious from the context of the statement and the fact it is included as a one-sentence *footnote* in a twelve-page Memorandum and Order.

### B. Motion for Certification of a Final Order Pursuant to Rule 54(b)

Alternatively, PEIC requests that the Court certify the April 23, 2010 Order as "final" pursuant to Rule 54(b) and allow it to be immediately appealed. In this case, both PEIC and Global have remaining claims for relief notwithstanding the April 23, 2010 Order. As described below, the Court finds that a Rule 54(b) certification is not appropriate.

"In determining whether to certify an otherwise nonappealable order for appellate review under Rule 54(b), a district court must find that: (1) the judgment is 'final'; and (2) there is no just reason for delay." Roberson v. Pelosi, No. 99-3574, 2001 WL 541117, at *2 (E.D. Pa. May 21, 2001). In regard to the "no just reason for delay" prong, courts consider such factors as

> (1) the relationship between the adjudicated and unadjudicated claims;
>
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
>
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
>
> (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; and
>
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Berckeley v. Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006).

Here, pursuant to the above factors, PEIC has failed to establish that there is "no just reason for delay" of the appeal of the April 23, 2010 Order. First, there is a close connection between the adjudicated and unadjudicated claims because this entire case is, at its core, a breach of contract action. In the April 23, 2010 Order, the Court merely resolved one aspect of the

13

action – whether Global's liability pursuant to the Facultative Certificate was capped at $1 million, inclusive of expenses, pursuant to specific provisions in the agreement.  Global's counterclaim for relief on this issue is closely related to other aspects of this breach of contract action such as whether Global breached the Facultative Certificate and any damages associated with such a breach.  Second, the need for appellate review of the "cap" issue may be mooted if Global prevails in this action or damages are determined to be $1 million or less.  Finally, miscellaneous factors such as economic considerations and expense issues weigh against an immediate appeal.  It does not make sense to have the parties bear the expense of separate appellate litigation, at this point, when the "cap" issue may be mooted by future developments in this Court.  Similarly, it would be inappropriate to waste valuable appellate court resources at this time for the same potential mootness reasons and because other issues involving the same contract may be appealed once this case is complete.  Thus, there are clearly considerable and sound reasons to delay appeal of the Court's April 23, 2010 Order.  PEIC's Motion for a Rule 54(b) certification is denied.

### C. Motion for Certification of Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)

Finally, in the alternative, PEIC requests that the Court certify the April 23, 2010 Order for immediate appeal pursuant to 28 U.S.C. § 1292(b).  As previously noted, the "[d]ecision to certify an interlocutory order for appeal under § 1292(b) 'rests within sound discretion of the trial court', and 'the burden is on the party seeking certification to demonstrate that exceptional circumstances justify departure from basic policy against piecemeal litigation and of postponing appellate review until after the entry of final judgment.'"  Burella, 2010 WL 235110, at *5

(citation omitted).

First, PEIC has failed to demonstrate that the Court's April 23, 2010 Order involves "a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Contrary to PEIC's assertions, the Court did not apply New York law in interpreting the Facultative Certificate and did not find <u>Bellefonte Reinsurance Company v. Aetna Casualty and Surety Company</u> and its progeny controlling. 903 F.2d 910 (2d Cir. 1990). Instead, the Court merely interpreted the plain language of the Facultative Certificate and noted that <u>Bellefonte</u> and its progeny were well-reasoned, persuasive authority that interpreted similar agreements. As PEIC has noted, "there is not a single decided case that has interpreted language identical to that at issue here, as contained in the Facultative Certificate issued by Global to PEIC, so there is no controlling law to be applied . . . ." (PEIC's Reply Mem. on Cross-Mots. for Judgment on the Pleadings at 1-2.) PEIC simply disagrees with the Court's legal interpretation.

Second, to the extent PEIC argues that the Court followed <u>Bellefonte</u> and its progeny and applied a "<u>Bellefonte</u> cap", PEIC has not shown that there is substantial ground for difference of opinion regarding this body of law. "A difference of opinion can only arise out of genuine doubt as to the correct legal standard and where there are conflicting decisions regarding the legal standard which necessitate the need for intervention by a higher court." <u>Stanley v. St. Croix Basic Servs. Inc.</u>, No. 2003-55, 2008 WL 4861448, at *3 (D.V.I. Nov. 3, 2008); <u>see also</u> <u>Schnelling v. KPMG LLP</u>, No. 05-3756, 2006 WL 1540815, at *3 ("In order to show that a substantial ground for difference of opinion exists, a moving party must demonstrate that the court applied one legal standard and that 'others courts have substantially differed in applying that standard.'"). Here, PEIC's citation to ***one*** lower court case in support of its position, <u>Penn</u>

15

Re, Inc. v. Aetna Casualty and Surety Company, No. 85-385-CIV-5, 1987 WL 909519 (E.D.N.C. June 30, 1987), a case decided before Bellefonte, is not sufficient to establish a substantial ground for difference of opinion. Oyster v. Johns-Manville Corp., 568 F. Supp. 83, 88 (E.D. Pa. 1983) (noting that plaintiff only cited one case to support his position and finding: "Plaintiff has also failed to demonstrate a 'substantial ground for difference of opinion' by his inability to adduce a sufficient number of 'conflicting and contradictory opinions' which have considered the issue . . . . This single case demonstrates that while there may be grounds for difference of opinion, they are not, however, substantial").[4]

Third, Plaintiff has not even come close to demonstrating how an "immediate appeal" would "materially advance the ultimate termination of this litigation." Specifically, this is not an "exceptional case" where "an immediate appeal may avoid protracted and expensive litigation." Roberson, 2001 WL 541117, at *4 ("[A § 1292(b) certification] is to be used only in exceptional cases when an immediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation."). In contrast, allowing an immediate appeal in the instant case would only trigger another arm of litigation, at the appellate level, in a situation where such an appeal may never become necessary. As noted above, the appeal of the "cap" issue may end up mooted by future developments in this Court.[5]

---

[4] PEIC's citation to cursory dicta in one case, a dissent in another, and secondary authorities also fails to establish a substantial ground for difference of opinion.

[5] PEIC argues that an immediate appeal could advance the resolution of this case by removing an impediment to settlement. Specifically, PEIC contends it will need to litigate this case to a final conclusion in order to stop the expansion of the "Bellefonte rule" into this jurisdiction. As an initial matter, the Court fails to see how its legal interpretation of the specific

16

For the reasons set forth above, PEIC's Motion is denied in all respects.

An appropriate Order follows.

---

contract at issue in this case impedes settlement talks. Further, as other courts in this District have done, the Court rejects this "settlement" argument for § 1292(b) certification purposes. See Piazza v. Major League Baseball, 836 F. Supp. 269, 272 (E.D. Pa. 1993) ("[Defendant] stresses in its submissions that settlement will not be possible in the absence of certification, and that therefore certification will materially advance the ultimate termination of the litigation by making settlement possible. I reject this as a controlling contention for § 1292(b) certification in this case.")