IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : | No. 09-6055 |
| GLOBAL REINSURANCE CORPORATION OF AMERICA (FORMERLY KNOWN AS CONSTITUTION REINSURANCE CORPORATION), | : : : : : : | |
| Defendant. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                           **APRIL 18, 2011**

Presently before the Court are a Motion to Strike ("Motion to Strike") filed by Plaintiff/Counterclaim Defendant Pacific Employers Insurance Company ("PEIC"), an Opposition to PEIC's Motion to Strike ("Global's Opposition") filed by Defendants/Counterclaim Plaintiff Global Reinsurance Corporation of America ("Global"), and a Reply Memorandum of Law in Further Support of [PEIC]'s Motion to Strike ("Reply Memorandum") filed by PEIC.

**I.    BACKGROUND**

The claims in this case relate to a reinsurance contract.[1]  For the period June 1, 1980 to June 1,

---

[1] As described in PEIC's Complaint, "[i]n a reinsurance contract, a reinsurer agrees to indemnify the reinsured against all or part of the loss that the reinsured may sustain under an insurance policy or policies the company has issued, in exchange for a portion of the premium paid to the reinsured for the insurance policies." (Compl. ¶ 7.)

1981, PEIC entered into a facultative reinsurance contract[2] ("Facultative Certificate") with Global, Certificate No. 68224, through which Global, as the reinsurer, agreed to reinsure an umbrella commercial liability policy (No. XMO-003649) ("Direct Policy") that PEIC issued to the Buffalo Forge Company ("Buffalo Forge").

At some point after the Facultative Certificate was executed, Buffalo Forge and its corporate successors were named as defendants in numerous asbestos products personal injury lawsuits. PEIC participated in the defense and indemnity of Buffalo Forge pursuant to the Direct Policy.

By September 2009, PEIC's payments on behalf of Buffalo Forge exceeded the $1 million retention on the Facultative Certificate. On or around September 2, 2009, PEIC billed Global pursuant to the Facultative Certificate. Along with the billing, PEIC submitted supporting information and portions of its investigative claim file to Global. In response, Global requested additional documentation to support the billing. According to PEIC, Global has not paid the amounts billed pursuant to the Facultative Certificate. Specifically, at the time of PEIC's Complaint, Global allegedly "owe[d] PEIC $559,072 under the Facultative Certificate for its share of defense and indemnity payments in connection with the underlying asbestos claims against Buffalo Forge." (Compl. ¶ 27.)

PEIC filed its Complaint against Global in this Court on December 18, 2009. Count I of the Complaint alleges breach of contract and Count II seeks declaratory relief for a declaration of its rights under the Facultative Certificate. On February 24, 2010, Global filed its Answer, Affirmative

---

[2] "A 'facultative' reinsurance contract reinsures a specific insurance policy or risk, as opposed to 'treaty' reinsurance, which reinsures multiple insurance policies or an entire book of business written by the reinsured." (Compl. ¶ 8.)

Defenses, and Counterclaim. In Count II of its Counterclaim, Global sought a declaration that the $1 million limit of liability set forth in the Facultative Certificate is the maximum that PEIC could potentially recover under the Facultative Certificate in connection with the asbestos litigation liabilities. On February 25, 2010, PEIC filed its Answer to Global's Counterclaim.

On February 26, 2010, Global filed a Motion for Judgment on the Pleadings regarding Count II of its Counterclaim. On March 19, 2010, PEIC filed a Response in Opposition to Global's Motion and a Cross-Motion for Judgment on the Pleadings regarding Count II of Global's Counterclaim. Specifically, PEIC requested that the Court find that as a matter of law Global is obligated for up to $1 million of loss and, in addition thereto, a pro rata share of expenses pursuant to the language of the Facultative Certificate. On April 2, 2010, Global filed a Response to PEIC's Cross-Motion for Judgment on the Pleadings. On April 8, 2010, PEIC filed a Reply. On April 23, 2010, we ruled that expenses are subject to the $1 million limit stated in the "Reinsurance Accepted" section of the of the Facultative Certificate. On May 7, 2010, PEIC submitted a Motion for Consideration or in the Alternative, for Certification of a Final Order Pursuant to Federal Rule of Civil Procedure 54(b) or, in the Alternative to Certify [our] April 23, 2010 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b). We denied that Motion on June 9, 2010.

The events giving rise to the instant Motion to Strike stem from statements made during a dispute over discovery, which began in October of 2010. On October 22, 2010, PEIC filed a Motion to Compel Global to respond to several interrogatories, document requests, and deposition requests. The requests most relevant to this Motion are PEIC's Motion to Compel Global to respond to

Plaintiff's Interrogatory No. 7,[3] Plaintiff's Document Request No. 22,[4] and PEIC's Motion to Compel Global to respond to the topics outlined in Paragraph 4 of Plaintiff's Notice of Deposition to Global.[5] On November 5, 2010, Global filed a Response in Opposition to PEIC's Motion to Compel asserting that it no longer intended to pursue the claim that it was prejudiced by late notice. In rendering our decision, we relied on Global's representation and we denied as moot PEIC's Motion to Compel regarding Plaintiff's Interrogatory No. 7, Plaintiff's Document Request No. 22, and the topics outlined in paragraph 4 of Plaintiff's Notice of Deposition to Global on November 12, 2010. In light of our April 23, 2010 ruling declaring that expenses are included in the $1 million policy limit, we also denied as moot PEIC's Motion to Compel regarding Document Request No. 18[6] and Document Request No. 20.[7]

---

[3] PEIC's Interrogatory No. 7 states: "If Global contends that it was prejudiced by the timing of the notice provided by PEIC regarding the [r]einsurance [c]laim, state precisely, and detail how, Global was prejudiced." (Pl.'s Interrog. No. 7.)

[4] PEIC's Document Request No. 22 requests: "All documents relating to, supporting or pertaining to the allegations contained in paragraph 57 of Global's Answer, Affirmative Defenses, and Counterclaim." (Pl.'s Request for Prod. of Docs. No. 22.)

[5] Paragraph 4 of [PEIC]'s Notice of Deposition to Global requests Global to produce a designee is familiar with: "Identification of and the particular facts and circumstances surrounding all commutations alleged, as asserted in paragraph 57 of Global's Answer, to have occurred between 2001 and 2008." (Pl.'s Notice of Dep. ¶ 4).

[6] PEIC's Document Request No. 18 requests: "All documents relating to Global's billings of asbestos-related loss or expense to reinsurers or retrocessionaries under any reinsurance contract containing terms and conditions identical to or similar to the terms and conditions of the Facultative Certificate." (Pl.'s Request for Prod. of Docs. No. 18.)

[7] PEIC's Document Request No. 20 requests: "All documents representing or demonstrating how Global has presented asbestos-related loss and expense to its reinsurers or retrocessionaries under reinsurance contracts containing terms and conditions that are the same or similar to those contained in

4

On December 22, 2010, PEIC filed a Motion to Strike Paragraphs 39, 57 and 68-72 of Global's Answer, Affirmative Defenses, and Counterclaim contending that those paragraphs were no longer relevant based on representations made by Global that it was no longer planning to pursue its claim that PEIC's late notice prejudiced Global. (Pl.'s Mem. in Support of Mot. to Strike at 1.) Paragraph 39 pertains to Global's Affirmative Defenses and states: "Plaintiff breached its duty of utmost good faith that it owed to Global." (Answer ¶ 39.) Paragraph 57 relates to Global's Counterclaim against PEIC for declaratory judgment that PEIC breached the notice provision of the Facultative Certificate (Count II) and states:

> In the seven year time period that PEIC was aware of the underlying asbestos liabilities but did not notify Global of such liabilities, Global commuted some of its recessional coverage. Global would be unable to recover any of its recessional coverage in connection with underlying asbestos liabilities in the event that Global is obligated to pay any amounts for these liabilities to PEIC under the Facultative Certificate.

(Answer ¶ 57.) Paragraphs 68-72 comprise Count III of Global's Counterclaim seeking declaratory relief regarding the parties' rights and obligations under the Facultative Certificate. Id. at ¶¶ 68-72. Global "disputes that it owes amounts billed, and to be billed, by PEIC per the terms, conditions and definitions of the Facultative Certificate." Id. at ¶ 69 Furthermore, Global seeks a judicial determination that:

> PEIC is not entitled to recover under the Facultative Certificate for any cession to Global in connection with PEIC's defense and indemnity payments in connection with the underlying asbestos liabilities, to the extent that:
>
> a. any billing to global is inconsistent with the excess of loss nature of the

---

the Facultative Certificate, specifically as they relate to the obligation to pay expenses in addition to loss." (Pl.'s Request for Prod. of Docs. No. 20.)

     reinsurance provided by the Facultative Certificate;
  b. PEIC's cession does not satisfy or is in violation of the terms, conditions, and/or definitions of the Facultative Certificate; or
  c. PEIC breached its duty of utmost good faith and fair dealing owed to Global.

(Answer ¶ 70.) On January 5, 2011, Global filed an Opposition to PEIC's Motion to Strike arguing that PEIC's Motion should be denied as untimely, that paragraph 57 alleging prejudice does not harm Plaintiff and should therefore remain, and that paragraphs 39 and 68-72 alleging breach of the duty of good faith are pertinent to the litigation. (Global's Opposition 6.) On January 10, 2011, PEIC filed a Reply arguing that we may consider a Motion to Strike at any time based on our ability to act unilaterally, that Global waived the affirmative defenses and counterclaims set forth in paragraphs 37 and 68-72, and that paragraph 57 should be stricken because both parties agree that it is immaterial. (PEIC's Reply Mem. at 3.)

## II. STANDARD OF REVIEW

  Federal Rule of Civil Procedure 12(f) governs Motions to Strike. It states, in relevant part: "The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief." Del. Health Care Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291-92 (D. Del. 1995). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id. The court may act on its own or on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. Id. The language of Fed. R. Civ. P. 12(f)(1) has been interpreted to allow us to consider untimely motions to strike. Krauss v. Keibler-Thompson Corp., 72 F.R.D. 615,

6

617 (D. Del. 1976). We may exercise our discretion to hear an untimely Motion to Strike in the interest of insuring a fair and efficient trial. Id.

District courts are afforded "considerable discretion" when addressing a motion to strike. See Woods v. ERA Med LLC, No. 08-2495, 2009 U.S. Dist. LEXIS 3965, at *32 (E.D. Pa. Jan. 21, 2009). Generally, motions to strike are not favored and "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Rd. Dev. Corp. v. Carlson Corp. - Ne., No. 89-7037, 1990 U.S. Dist. LEXIS 6201, at *7 (E.D. Pa. May 23, 1990); see also DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007). For the foregoing reasons, PEIC's Motion to Strike will be granted in part and denied in part.

### III. DISCUSSION

#### A. Timeliness of PEIC's Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a party must submit a motion to strike either before responding to the pleading or if a response is not allowed, within 21 days after being served with a pleading. Fed. R. Civ. P. 12(f)(2). However, the rule explicitly states that a court may also "act on its own." Fed. R. Civ. P. 12(f)(1). Global filed its Answer, Affirmative Defenses, and Counterclaim on February 24, 2010. PEIC filed its Answer to Global's Counterclaim on February 25, 2010 and its Motion to Strike on December 22, 2010. Since PEIC failed to file its Motion to Strike either before responding to Global's Counterclaim or within 21 days after being served with the Answer, the Motion to Strike was not timely. Global argues that we should not consider the Motion to Strike on the basis of its untimeliness. (Global's Opposition at 3.) PEIC, on the other hand, argues that we should

7

exercise our discretion and consider the Motion pursuant to Rule 12(f)(1). (PEIC's Reply Mem. at 2-3.) It is clear that there is substantial disagreement between the parties regarding which affirmative defenses and issues are still in play. Thus, we will consider the Motion to Strike to clarify the issues to be litigated at trial.

### B. Matters Outside the Pleadings Presented by PEIC

We note that PEIC references several matters outside of the pleadings throughout its Motion to Strike. These include a letter from Global to PEIC dated November 1, 2010, the deposition of Judith A. Harnadek, several emails between PEIC and Global, and the deposition of Peter Morone.

When we consider a motion to strike, we decide it "on the basis of the pleadings alone." DeLa Cruz v. Piccardi Press, 521 F. Supp. 2d 424, 429 (E.D. Pa. 2007) (citing North Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In Krauss v. Keibler-Thompson Corp., 72 F.R.D. 615, 617 (E.D. Pa. 1976), the court held that deciding a Rule 12(f) motion to strike on the basis of the pleadings alone was warranted by the text of Rule 12 itself. Id. The Krauss court noted that Rule 12(f) is excluded by Rule 12(d),[8] which allows us to treat certain motions as motions for summary judgment when matters outside the pleadings are to be considered. Id. Accordingly, that court declined to consider deposition testimony offered by a party in support of its motion to strike. Id. at 618. We agree with the Krauss court's interpretation of Rule 12 and, thus, we will determine the present Motion to Strike "on the basis of the pleadings alone." Krauss, 72 F.R.D. at 617.

---

[8] Federal Rule of Civil Procedure 12(d) states in pertinent part: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

8

### C. Motion to Strike Paragraph 57 of Global's Answer, Affirmative Defenses, and Counterclaim

In our November 12, 2010 Order, we denied certain portions of PEIC's Motion to Compel regarding the discovery of information related to Global's claim that it was prejudiced by PEIC's late notice. We denied those portions of PEIC's Motion to Compel because Global had represented to us and to PEIC that it had withdrawn its prejudice claim relating to the relevant notice provision. Global communicated to this court that "Global has withdrawn its prejudice claim" and "Global withdrew its prejudice claim in this litigation because the notice condition contained in the reinsurance certificate simply does not require Global to demonstrate prejudice." (Global's Opposition to PEIC's Mot. to Compel at 6.) Paragraph 57 states:

> In the seven year time period that PEIC was aware of the underlying asbestos liabilities but did not notify Global of such liabilities, Global commuted some of its recessional coverage. Global would be unable to recover any of its recessional coverage in connection with underlying asbestos liabilities in the event that Global is obligated to pay any amounts for these liabilities to PEIC under the Facultative Certificate.

(Answer ¶ 57.) PEIC argues that Paragraph 57 should be stricken because it relates to the prejudice claim, which Global has withdrawn. In its Opposition, Global again states that it no longer plans to pursue its prejudice claim, but, despite this fact, argues that we should not strike Paragraph 57 because allowing it to remain in the pleadings would not cause any harm to PEIC. (Global's Opposition at 4.) Global concedes that "whether Paragraph 57 remains is immaterial to Global." Id. We find that Paragraph 57 clearly relates to the prejudice claim, which Global has unequivocally withdrawn. Furthermore, we find that allowing this allegation to remain would unnecessarily confuse the issues as to which counterclaims or affirmative defenses are being asserted by Global and would also result in

9

prejudice to PEIC because discovery closed on February 4, 2011 and we have previously denied PEIC's requests to compel discovery on this issue. Thus, we will grant PEIC's Motion to Strike Paragraph 57.

### D. PEIC's Motion to Strike Paragraphs 39 and 68-72 of Global's Answer, Affirmative Defenses, and Counterclaim

Unlike Global's prejudice claim, Global has not explicitly withdrawn its claim that PEIC breached its duty of utmost good faith. PEIC claims that Global has withdrawn all affirmative defenses aside from their late notice defense, including the affirmative defense set forth in Paragraph 39 that PEIC "breached its duty of utmost good faith that it owed to Global." (Motion to Strike at 10.) In support of this claim, PEIC cites to Global's Opposition to PEIC's Motion to Compel. Therein, Global stated:

> . . . PEIC argues that information regarding *different* reinsurance contracts, involving *different* claims and *different* facts and *different* parties is somehow relevant to resolve the very specific dispute of whether PEIC breached the notice condition of the Reinsurance Certificate, i.e., the only remaining dispute in this action.

(Global's Opposition to PEIC's Mot. to Compel at 11) (italics in original). Global contends, contrary to PEIC's assertions, that it has not waived this affirmative defense and that the allegations set forth in Paragraphs 39 and 68-72 lie "at the heart of this action." (Global's Opposition at 6.) Global further contends that whether PEIC breached its duty of utmost good faith is inextricably linked to the issue of late notice, which, both parties agree, Global has not withdrawn. We find that the phrase "i.e., the only remaining dispute in this action" in this context, is too vague to operate as a waiver of the affirmative defense of breach of the duty of good faith. Accordingly, we will deny PEIC's Motion to Strike

10

Paragraphs 39 and 68-72.

An appropriate Order follows.